FRED W. JONES, Judge.
Co-Quina Oil Company contracted with Butler-Johnson, Inc. to drill an oil well in Bossier Parish. Co-Quina also contracted with Weatherford-Lamb, Inc. to run pipe casing in connection with the drilling operation. Matlock worked for Weatherford-Lamb as chief of the casing crew and Good-son was a crew member. Both were allegedly injured, while performing casing work, through the negligence of the driller’s employees. As a result, this tort action was brought against Butler-Johnson and its driller, White.
Judgment was rendered rejecting plaintiffs’ claims and they appealed, contending the trial judge erred in his factual conclusions. For the reasons set forth, our examination of the record leads us to the conclusion that the trial judge did not commit manifest error in his factfinding. Consequently, we affirm the district court judgment.
According to the record, at about 8:00 o’clock P.M. on September 29, 1981, a six man crew of Weatherford-Lamb employees, including Matlock and Goodson, was dispatched to perform casing work on the rig in question. By way of background, the evidence indicates that the first function involved in running pipe casing in an oil well drilling operation is to fill the drill pipe with drilling mud, to prevent the casing from collapsing. The task is performed by pumping the drilling mud from large pits located below the drilling platform through a series of pipes up to the drilling floor and out through a flexible hose. The hose is held by two members of the casing crew until the drill pipe is filled. The flow of the drilling mud is regulated by a hand-operated valve at the end of the hose.
The rig in question had been modified by the establishment of a dual system for pumping mud. A low-pressure system, run by centrifugal pumps capable of pressure of up to 80 pounds per square inch was added for the express purpose of pumping drilling mud. The other was a high-pressure system run by the drilling or rig pumps and capable of exerting pressure of up to 3200 pounds per square inch.
On the night of the alleged accident the casing crew had run two joints of casing and then prepared to fill the casing with mud by connecting the 3-inch flexible fill-up hose to the Butler-Johnson fill-up line on the rig floor. After inserting the end of the fill-up hose into the casing, Matlock opened the valve to allow the mud to flow into the casing. Goodson was standing behind Matlock. The hose bucked, for some reason, throwing Matlock back into Goodson and causing both to fall.
Plaintiffs contend that the accident was due to the negligence of Butler-Johnson employees in tying the fill-up hose into the highly pressurized stand pipe rather than into the low-pressure fill-up line.
In a well-written opinion dealing with this factual issue, the trial judge stated:
“The principal remaining issue is whether the fill-up line was hooked into the low-pressure system as intended, or whether it was hooked into the high-pressure system at the stand pipe. It is clear from the testimony that the Weatherford-Lamb employees hooked up the fill line at the place where they were instructed to hook the line up by the employees of Butler-Johnson, Inc.
“Neither plaintiff knew at the trial where the fill-up line was hooked up, although Mr. Goodson had indicated in a prior statement to adjuster Don Phillips shortly after the accident that the hose was tied into the fill-up line and valve. Counsel differ greatly as to what Goodson said and meant in the statement, but the Court believes he indicated and meant the fill-up hose was tied into the shorter pipe, or the fill-up valve, which was connected to the low-pressure system. Keith Owens testified that he saw the fill-up hose tied into the fill-up valve after the accident.
*1044 “Plaintiffs rely heavily on the testimony of Paul Montgomery, an expert petroleum engineer, whose opinion was that plaintiffs had indicated that the hose bucked or jerked violently and threw both plaintiffs some eight feet across the rig floor onto some other machinery. Mr. Matlock, who was in the front nearest the nozzle of the hose, weighed 260 pounds, and Mr. Good-son weighed 170 pounds at the time of the accident. Mr. Matlock had previous back injuries and had injured his right knee before this accident, requiring three knee operations. He had been advised by his physician that he should not continue to do oil field work on drilling rigs because of his physical condition.
“Mr. Montgomery was of the opinion that a centrifugal pump could not generate enough force to throw two men eight feet across the rig floor, and he concluded that the fill-up line must have been tied into the rig pumps through the stand pipe so that the high-pressure system was in use. He admitted his opinion would change if plaintiffs’ description of the accident was changed, and he did not know that Mr. Matlock had prior knee and back trouble and had been advised by his physician not to work on oil rigs. He also stated that if the centrifugal pumps were used, then plaintiffs’ version of the accident must have been incorrect. Mr. Montgomery was also not aware that after the accident occurred Mr. Matlock finished the job of filling the casing with mud using the same hose and without changing the hookup or system. He said if the fill-up line had been hooked into the high-pressure systeto, the accident would have happened again and the job could not have been finished without a change in the system to use the low-pressure system and centrifugal pumps. He admitted that if no change was made to finish the job, that would be an indication that the centrifugal pumps had been used at the time of the accident.
“Defendant’s expert, Joe Collins, also a petroleum engineer, was of the opinion that the centrifugal pumps were used and that the accident occurred because Mr. Matlock opened the valve too fast and that thrust caused the hose to buck or jerk. He also believed that the plaintiffs were not holding down tight on the line and that they were simply thrown back by the action of the hose.
“In a prior opinion on a motion for summary judgment in this case on September 20, 1984, this Court concluded that there were several factual questions to be determined at the trial. These have now been resolved in the mind of the Court. As to the first question, the Court has concluded that Mr. Matlock was opening the valve at the end of the hose when the accident happened, and the Court rejects the testimony of Mr. Goodson in a prior statement to adjuster Don Phillips to the effect that Mr. Matlock was closing the valve when the accident occurred.
“As to the second factual question, the Court believes that Mr. Matlock opened the valve rapidly, causing thrust to make the hose buck. As to the third issue, the Court does not believe that plaintiffs were thrown eight feet across the rig floor by the bucking hose. The evidence convinces the Court that plaintiffs were thrown off balance by the jerk of the hose, and Matlock, who was the larger of the two men by far and who had an injured knee and back, was thrown backward, lost his balance and fell into Goodson, causing both to stumble and fall across the rig floor.
“Mr. Goodson said that he was not thrown eight feet in the air, but he was knocked back, and he finally said he did not know what happened, it happened so fast, and he did not know how he got over there (to the equipment where he came to rest). Mr. Matlock said the hose jumped out of the hole and threw plaintiffs backward, but not in the air. The credibility of Mr. Mat-lock’s testimony is lessened in the opinion of the Court because of his denial of prior back trouble and other inconsistencies. The Court therefore concludes that Mr. Matlock’s version is inaccurate and thus the opinion of Paul Montgomery is based on an inaccurate version of the accident *1045 and is not accepted by the Court for that reason.
“Plaintiffs have the burden of proving negligence of the defendants by a preponderance of the evidence, and this Court concludes that plaintiffs have failed to prove that the fill-up hose was connected to the stand pipe or was in any way connected to or pressurized by the high-pressure system. Plaintiffs have not proven any negligence on the part of the defendants.”
Plaintiffs argue in their appeal brief that, after the accident, someone could have disconnected the fill-up hose from the stand pipe and reconnected it to the low-pressure system or the driller could have reduced pressure in the stand pipe. This is purely speculative, unsupported by evidence presented at the trial, and countered by the positive testimony of Butler-Johnson employees that the fill-up hose was properly connected to the low-pressure system rather than to the stand pipe.
Plaintiffs also argue that the fill-up hose must have been connected to the stand pipe since no witness had ever seen two grown men hurled eight feet by the bucking of a fill-up hose pressurized by centrifugal pumps. The flaw in this argument is that the premise (that plaintiffs were thrown eight feet) was found factually untrue by the trial judge, whose determination is supported by the record.
Perhaps most persuasive in the buttressing of the trial court’s fact-finding on the central issue in the case is evidence concerning the method of accessing the high-pressure system through the stand pipe by removing the bull plug or pressure gauge, inserting a nipple, and hooking up the fill-up hose to the nipple. This process requires from 15 to 20 minutes to complete. However, a tool pusher testified that after the accident he examined the bull plug on the stand pipe nearest the fill-up line and the plug was not disturbed. Further, the driller stated that the rig pumps, which could only supply pressure to the high-pressure system, were not even operating at the time of the accident.
After the accident Matlock and his crew worked approximately five hours and finished the job without further incident, using the same hose and without changing the hookup or system. It appears that if the fill-up hose had been hooked into the high-pressure system the accident would have again occurred until the connection with the high-pressure system was severed.
To summarize, this case presented one basic factual issue for resolution — was the fill-up hose correctly tied in to the fill-up line or was it, through the negligence of Butler-Johnson employees, tied in to the stand pipe pressurized by the rig pumps? Based upon his assessment of witness credibility and the physical evidence at the well site, the trial judge made the factual determination that the fill-up hose was correctly tied in to the fill-up line rather than to the stand pipe. Since the record evidence amply supports this factual determination, we cannot state that the trial court committed manifest error.
For these reasons, we affirm the district court judgment, at appellants’ cost.